IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Rachel M. Evans, ) | |
| ) | Civil Action No.  8:05-3166-GRA-BHH |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Rachel M. Evans, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 49 years old on the date of the Administrative Law Judge's ("ALJ's") decision. (R. 47.)  The plaintiff has a high school education (R. 97), and worked as a personnel assistant and administrative assistant. (R. 92,104.)

On July 13, 2003,  the plaintiff filed her current application for DIB alleging she became disabled on April 10, 2003, due to fusion of the cervical spine, spinal surgery, arthritis, and asthma. (R. 72, 77-79.)  Her application was denied initially and on reconsideration, and a hearing was held before the ALJ on October 20, 2004. (R. 42-53, 326-57.)  On March 14, 2005, the ALJ issued a decision finding the plaintiff was not disabled and could perform her past relevant work as a personnel assistant. (R. 16-26.)

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

The Appeals Council denied the plaintiff's request for review (R. 4-7) making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

1. The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's rheumatoid arthritis, degenerative disc disease, asthma, diabetes mellitus, and hypertension are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the residual functional capacity to perform a significant range of sedentary work activity as described above.

7. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f)).

(R. 25.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential

questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends the ALJ erred by failing to give sufficient weight to the opinion of a treating physician, by failing to adequately compare the demands of the her past relevant work with her residual functional capacity, in omitting limitations in determining her residual functional capacity, and in assessing her credibility.  She also alleges the ALJ erred in finding that she did not satisfy the criteria of the listing for rheumatoid arthritis.

### TREATING PHYSICIAN'S OPINION

The plaintiff contends the ALJ erred in failing to give sufficient weight to a treating physician.  Dr. Georgia C. Roane, a rheumatologist who has treated the plaintiff since June 2003, has opined that the plaintiff is totally disabled as a result of her inflammatory arthritis and meets Listing 14.09 of the Listing of Impairments. (R. 297, 299.)  In a letter dated May 17, 2004, Dr. Roane indicated that the plaintiff "has severe involvement in her hands, wrists, knees, and hips" and "in spite of aggressive therapy, she remains quite symptomatic."  (R. 299.) Dr. Roane concluded that "due to the severity of her arthritis involving both upper and lower extremities, [the plaintiff] is not able to work in any capacity."  (*Id.*)

4

The ALJ found "that Dr. Roane's own treatment notes support a finding that with treatment and medication, the claimant's rheumatoid arthritis improved with little synovitis and swelling. Therefore, as these medical opinions can be seen to be based primarily on the claimant's subjective complaints, and are inconsistent with the weight of the medical evidence of record, they are accorded minimal weight." ( R. 24.)

The treating physician's opinion must be given controlling weight if it is well supported and not inconsistent with other substantial evidence of record. *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987). The ALJ is not bound by the opinion of the treating physician but is required to give it great weight and may not disregard it in the absence of persuasive contradictory evidence. *P. Mitchell v. Scheiker*, 699 F.2d 185 (4th Cir. 1983). If the ALJ finds a treating source's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, he is to give it controlling weight. 20 CFR §§ 404.1527(d)(2), 416.927(d)(2). The ALJ is required to give good reasons for the weight given to a treating source's opinion. *Id*.; SSR 96-2p.(decision must contain specific reasons for weight given to treating sources medical opinion).

In this case, the ALJ's decision, however, is not supported by the record. In regards to the ALJ's claim that the plaintiff's condition improved significantly on medications, the ALJ appears to be referring to a single notation dated September, 2003, that the plaintiff's condition had actually improved to the point that "at least she can walk." (R. 307.) However, the ALJ focused on only this one entry and follow-up records contradict it.

In November, 2003, it was noted that the plaintiff's arthritis was still "very painful," but that medication "seems to be helping a bit." (R. 303.) The plaintiff's inflammatory arthritis was noted still to be "very active." *Id*. On a follow-up visit on January 30, 2004, the medication Arava was stopped because it was noted that it was not helping and the plaintiff was noted to be "once again painful and stiff." (R. 302.) In April, it was noted that the

5

plaintiff complained that she continued to be very achy and stiff, and requested cortisone injections. (R. 300.)

The medical evidence reveals that despite medications and treatment, the plaintiff's condition remained debilitating and difficult to manage. Dr. Roane notes repeatedly throughout her treatment of the plaintiff that her inflammatory arthritis remained "very active" and the plaintiff's pain remained severe. Regarding the claim that the plaintiff's condition was largely resolved with medications, Dr. Roane specifically stated that, "We have been very aggressive with medications. However, in spite of aggressive medical therapy, she remains quite symptomatic." (R. 299.) Furthermore, contrary to the ALJ's conclusion, Dr. Roane's opinion was not based solely on the plaintiff's subjective complaints. Dr. Roane noted the plaintiff had tenderness, swelling, and synovitis in her joints and hands. (R. 302, 303, 307, 308, 312, 313-14.) Further, the plaintiff's blood test results which show elevated levels of the rheumatoid factor support Dr. Roane's opinion. (R. 311.)

The record does not support the ALJ's reasons for discounting the treating physician's opinion. In other words, the record does not support the ALJ's conclusion that the treating physician's opinion was based only on the plaintiff's subjective complaints. Further, the ALJ failed to set out the medical evidence inconsistent with Dr. Roane's opinion. This case should be remanded for an evaluation of Dr. Roane's opinion. The ALJ should specify what evidence, if any, is inconsistent with Dr. Roane's opinion.

**LISTING 14.09**

The plaintiff contends the ALJ erred in failing to properly evaluate whether her inflammatory arthritis meets and/or equals the criteria of Listing 14.09 (A).[2] An ALJ must

---

[2]Listing 14.09 provides, in pertinent part:

14.09 Inflammatory arthritis. Documented as described in 14.00B6, with one of the following:

A. History of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively, as defined in 14.00B6b and 1.00B2b and B2c; . . .

6

fully analyze whether a claimant's impairment meets or equals a listed impairment "where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp.2d 384, 391 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

A claimant for disability benefits has the burden of proving his disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir.1981). It is not enough that the impairment have the diagnosis of a listed impairment; it must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d). The ALJ is to compare the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1526(a). Medical equivalence can be found if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526(a). "Medical equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). Medical testimony may also be considered.

The plaintiff meets the clinical requirements of a Listing 14.09(A): "history of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints . . ." The issue is whether the plaintiff's condition rendered her unable to ambulate effectively, or to perform fine and gross movements effectively.

Listing 14.09(A) requires, among other things, documented findings of an "inability to ambulate effectively or inability to perform fine and gross movements effectively . . . ." An "inability to ambulate effectively" refers to "insufficient lower extremity functioning . . . to permit independent ambulation without the use of hand-held assistive device that limits the functioning of both upper extremities." "Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps

7

at a reasonable pace with the use of a single hand rail." An "inability to perform fine and gross movements effectively" refers to "an extreme loss of function of both upper extremities."

Although the plaintiff's treating physician, a rheumatologist, indicated the plaintiff's inflammatory arthritis met the requirements of Listing 14.09 (R. 297), the ALJ concluded that the medical evidence failed to support a finding that her rheumatoid arthritis resulted in an inability to ambulate effectively or perform fine and gross movements. (R. 23.) The ALJ found the evidence in this case contained no documented findings of such extreme limitations. (R. 22-23.) In fact, the plaintiff concedes the medical evidence in the record does not give enough information regarding the plaintiff's ambulation or gross motor movements to determine whether she would meet the criteria of the Listing. To be disabled under the Listing, however, the plaintiff must present evidence that the impairment meets or is medically equivalent to an impairment listed. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992). The plaintiff failed to carry this burden and the ALJ did not err in finding the plaintiff's condition failed to satisfy the criteria of Listing 14.09. Thus, the ALJ's decision that she was not disabled by an impairment meeting the Listing 14.09 should be affirmed.

**PAST RELEVANT WORK**

The plaintiff contends the ALJ failed to perform a proper analysis of the plaintiff's ability to perform her past relevant work. The ALJ denied the plaintiff's claim in this case at the fourth step of the sequential evaluation process established for the Social Security Administration to make disability determinations. *See* 20 C.F.R. § 404.1520. The ALJ determined that the plaintiff could perform past relevant work as a personal assistant and was therefore not disabled. (R. 25.) Specifically, the ALJ determined that the plaintiff could return to her former occupation as a "Personal Inspector" but did not specify whether the plaintiff could perform this work as it actually existed in the national economy or as it was actually performed by the plaintiff.

SSR 82-62 sets forth what findings an ALJ is required to regarding whether a claimant can return to her past relevant work. SSR 82-62 states, in pertinent part:

> Determination of the claimant's ability to do past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as it is generally performed in the economy. The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

The ALJ did not make findings of fact "as to the physical and mental demands of the past job/occupation" as required by SSR 82-62. (R. 16-19.) Furthermore, SSR 82-61 requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work.

In *Parsons v. Apfel*, 101 F. Supp.2d 357, 362 (D. Md. 2000), the court found that the ALJ did not provide any discussion of what he considered to be the pertinent duties of the claimant's past relevant work as a "salesman" and "consultant." The court concluded that the ALJ's decision at Step Four was not supported by substantial evidence, in part, because of the lack of any discussion of the nature of the claimant's past relevant work. *Id*. The ALJ failed to identify the specific requirements of the plaintiff's past work. Accordingly, this case should be remanded for the ALJ to address whether the plaintiff could perform this work as it actually existed in the national economy or as it was actually performed by the plaintiff.

**VE TESTIMONY**

The plaintiff contends the ALJ omitted limitations in his hypotheticals to the VE. An ALJ's hypothetical question to a VE must take into account all of the disabilities for which proof is presented. *Hicks v. Califano*, 600 F.2d 1048 (4th Cir. 1978). For a VE's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence of record, and it must be in response to questions which fairly set out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989). An ALJ may not rely upon the answer to a hypothetical question where the hypothesis fails to fit the facts. *Swaim v. Califano*, 599 F.2d 1309 (4th Cir. 1979).

The ALJ indicated the plaintiff would be limited to work that was "not complex." (R. 23.) The plaintiff contends the ALJ failed to include this restriction. However, the hypothetical question included the following statement: "This individual could do detailed but not complex work." (R. 355.)

The plaintiff also argues that the ALJ erred by failing to ask the VE whether any conflict existed between his testimony and information provided by the Dictionary of Occupational Titles (DOT). (Pl.'s Br. at 27-28.) A claimant must be found "not disabled" if she can perform the "actual functional demands and job duties of a particular past relevant job," or the "functional demands and job duties of the occupation as it is generally required by employers throughout the national economy." SSR 82-61. Here, the VE testified that with the limitations stated above, the hypothetical person could perform the plaintiff's past work "as a university personnel assistant." (R. 355). It is not apparent from the VE's testimony whether he relied on the plaintiff's description of that job's requirements as she performed it (R. 104-05) or the job's requirements as it is generally performed in the economy. Accordingly, this case should be remanded for the ALJ to clarify this hypothetical to the VE.

**PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

The plaintiff contends the ALJ did not include all of the documented limitations in his findings regarding the plaintiff's residual functional capacity as required by SSR 96-8p. The plaintiff contends the RFC assessment makes no findings regarding any limitations with the use of the plaintiff's arms and hands, despite repeated evidence of significant restrictions and limitation. The ALJ agrees the plaintiff has rheumatoid arthritis as a severe impairment, but failed to explain why this condition would not cause any restriction on the plaintiff's gross or fine dexterity.

The plaintiff also contends the ALJ erred when he rejected her use of a cane as a restriction. At the hearing, the plaintiff testified that she had to walk with a cane. Although there are no references in the medical records to the plaintiff's having ever been prescribed a cane or her need to use a cane, in the absence of evidence to the contrary, the ALJ is required to accept the plaintiff's statements. Therefore, this case should be remanded for the ALJ to consider these additional restrictions on the plaintiff's RFC, or alternatively, to explain why these restrictions are not supported by the record.

**PLAINTIFF'S CREDIBILITY**

In evaluating the plaintiff's credibility, the ALJ found the plaintiff's allegations were not totally credible and "inconsistent with the medical evidence of record, the claimant's reports to her physicians, and the treatment sought and received." (R. 21.) The ALJ did not specify what medical evidence was inconsistent. Specific findings are necessary if a claimant's testimony is to be found not credible. *Smith v. Heckler*, 782 F.2d 1176 (4th Cir. 1986). Credibility determinations must refer specifically to the evidence forming the ALJ's conclusion, as the duty of explanation is always an important part of the administrative charge. *Hatcher v. Secretary*, 898 F.2d 21 (4th Cir. 1989). The ALJ did not properly assess the plaintiff's credibility and accordingly should be remanded for a proper assessment.

## **CONCLUSION AND RECOMMENDATION**

Therefore, it is recommended that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent with this report.  *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks
United States Magistrate Judge

January 23, 2007.
Greenville, South Carolina